UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| N.P., A MINOR CHILD, BY AND THROUGH HER PARENTS AND NEXT FRIENDS, A.P. and J.P.<br>　　Plaintiff<br>v.<br><br>HAMPDEN-WILBRAHAM REGIONAL SCHOOL DISTRICT,<br>　　Defendant | C.A. No. 3:15-CV-30164-KAR |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.　INTRODUCTION**

In this action, the Plaintiff, by and through her parents, is seeking to recover attorney's fees in the amount of $38,887.50, plus related costs in the amount of $916.48, for work completed in support of a successful administrative action against the Hampden-Wilbraham Regional School District (the "District" or the "Defendant") which resulted in a benefit to the Plaintiff and materially altered the relationship between the parties.

As a prevailing party, the Plaintiff is entitled to recover attorney's fees and related costs under the provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B).

**II.　FACTUAL SUMMARY[1]**

The Plaintiff, N.P., is a girl who resides with her parents in Wilbraham, Massachusetts. N.P. is a child with a disability within the meaning of the IDEA and, as such, is entitled to a free and appropriate public education under that statute. N.P.'s diagnoses include Attention Deficit

---

[1] This factual summary is derived from the Plaintiff's Statement of Material Facts, with citations to the record, which has been filed with this Memorandum.

Hyperactivity Disorder (ADHD), Dyslexia and a Specific Learning Disability in Reading. Her disabilities have combined with significant memory and processing deficits to negatively impact her ability to read.

Hampden-Wilbraham Regional School District is a regional school district duly organized, established and existing under the laws of the Commonwealth of Massachusetts. It receives federal funds from the United States Department of Education pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.*, and is required to provide a free and appropriate public education to all school age children with disabilities residing in the District pursuant to the requirements of the IDEA and the Massachusetts Special Education law, G.L. c. 71B.

During April 2014, before she enrolled as a student in the District, N.P. participated in a psychoeducational evaluation with Dr. Joanna Miles, a school psychologist, who diagnosed her with a specific learning disability in reading and recommended that she be placed in a substantially separate language-based program to help remediate her deficits. In May 2014, Dr. Miles's evaluation was shared with the District and a team meeting was held to consider N.P.'s program.[2] Contrary to Dr. Mile's recommendation, the team proposed an Individualized Education Program ("IEP")[3] for N.P. which placed her in an inclusion program with support in the general education classroom in mathematics and written expression, along with five 30-minute "pull-out" sessions per week in reading.[4] N.P.'s parents accepted the proposed IEP, but rejected the District's failure to place N.P. in a substantially separate language-based program in accordance with the recommendations of Dr. Miles.

---

[2] The "team" is a group of individuals who meet to determine a child's educational programming. 20 U.S.C. § 1414(d)(1)(B).
[3] An "IEP" is a document prepared by the child's team which defines his or her individualized educational program. 20 U.S.C. § 1414(d)(1)(A).
[4] "Pull-outs" refer to those portions of a student's educational program in which he or she is removed, or "pulled out" of the general education classroom to receive specialized instruction in a separate area.

N.P. enrolled as a second grade student in the District in September 2014 and began receiving educational services in a full inclusion classroom. In September 2014, N.P.'s parents arranged for N.P. to be evaluated by a speech and language therapist, Alicia Ziegler, who subsequently observed N.P. in her program at school during October 2014. Based upon her assessment, Ms. Ziegler diagnosed N.P. with Dyslexia and recommended that N.P. be educated in a language-based program.

Following a team meeting on November 3, 2014, the team amended N.P.'s IEP to add additional "pull-out" services in mathematics and speech and language, bringing the total number of times that N.P. was "pulled out" of her classroom for specialized instruction to twelve times per week. However, the District declined to provide a language-based program and N.P. continued to be educated in what the District characterized as a "full inclusion" program.[5]

On December 2, 2014, due to their dissatisfaction with their daughter's program, N.P.'s parents notified the District of their immediate intention to place N.P. at Curtis Blake Day School, a private special education school. In response to the parents' notification, the District convened another team meeting on December 16, 2014 and proposed an amended IEP. This amendment added five additional pull-out sessions to N.P.'s schedule, increasing the time that she spent outside of the inclusion classroom to 16 sessions per week. The team continued to characterize the amended IEP as a "full inclusion" program.

---

[5] The terms "full inclusion program," "partial inclusion program," and "substantially separate classroom" are terms of art used to describe a student's program under his or her IEP. In a "full inclusion program," IEP services are provided "outside the general education classroom less than 21% of the time." In a "partial inclusion program," a student receives IEP services outside the general education classroom "at least 21% of the time, but no more than 60% of the time." Under a "substantially separate classroom" program, "IEP services are provided outside the general education program for more than 60% of the time." *See* Plaintiff's Statement of Undisputed Facts, Exhibit E.

Between N.P.'s enrollment in the District in September 2004 and the first day of the hearing in this matter, June 23, 2015, the District did not ever propose an IEP for N.P. which offered to place her in a substantially separate language based program.

The Parents retained Sankey Law Offices, P.C. to represent their interests in obtaining appropriate special education services and an appropriate placement for N.P. After multiple meetings between the parties did not resolve their differences concerning N.P.'s special education program and placement, the Parents, on or about March 27, 2015, requested an impartial due process hearing before the Bureau of Special Education Appeals ("BSEA") pursuant to 20 U.S.C. § 1415.[6]

In their hearing request, the Parents requested "an order of placement at Curtis Blake Day School for the 2014-15 school year beginning in January 2015, with reimbursement of tuition and costs paid through the date of the order." For the 2015-16 school year, the Parents requested "an order of placement in [an] appropriate language-based program."[7]

During the 2014-15 school year, Curtis Blake Day School was a substantially separate private school which was approved by the Massachusetts Department of Education ("DOE") to provide special education services in Massachusetts. Prior to filing for a hearing on March 27, 2015, N.P.'s parents learned that at the end of the 2014-15 school year, Curtis Blake Day School would lose its affiliation with American International College and, consequently, its status as a DOE-approved school. Based upon this information, the parents did not request a placement at

---

[6] The provisions of the IDEA, 20 U.S.C. § 1415(f)(1)(A), impose an obligation on states to conduct impartial due process hearings to hear complaints with respect to any matter relating to the identification, evaluation or educational placement of a child, or the provision of a free appropriate public education to a child. In Massachusetts, these hearings are conducted by the BSEA in accordance with rules that have been promulgated pursuant to Massachusetts law. Mass.Gen.Laws ch. 71B, § 3; 603 Mass.Code.Regs. 28.08(5)(a).
[7] Under the IDEA, an action is initiated in a special education dispute by filing a request for a due process hearing which sets forth the nature of the dispute and describes the relief which is sought by the parents, similar to the filing of a complaint to initiate a civil action in court. 20 U.S.C. § 1415(b)(7).

Curtis Blake Day School for the 2015-16 school year but, instead, requested that the hearing officer order N.P. to be placed in an appropriate language-based program to be determined.

A hearing on the Plaintiff's claims was held over four days on June 23, 25, 29 and 30, 2015 before BSEA Hearing Officer Amy Reichbach. Hearing Officer Reichbach identified the issues presented for her determination as 1) whether the educational services provided for N.P. by the District from May 20, 2014 to the present constituted a free appropriate public education, and 2) whether the program the District proposed for the 2015-16 school year provides N.P. with a free appropriate public education.

During a four-day hearing, ten witnesses testified and the Hearing Officer was presented with 34 exhibits by the parents and 46 exhibits by the District. During the hearing, the Plaintiff presented expert testimony from Dr. Joanna Miles and Alicia Ziegler, both of whom recommended that N.P. be placed in a substantially separate language-based classroom that applies evidence-based teaching methodologies and provides multisensory instruction consistently across her day to address her difficulties with reading and language.

The District did not make a written offer of settlement at any time more than 10 days prior to the hearing pursuant to 20 U.S.C. § 1415(i)(3)(D)(i).

On August 19, 2015, Hearing Officer Reichbach issued a 31-page decision which granted Plaintiff the exact relief that had been requested in her hearing request. In her finding, Hearing Officer Reichbach specifically ruled that (1) N.P. requires instruction in a substantially separate, language-based classroom; (2) "[d]espite the substantial information it had in its possession on or before December 16, 2014 demonstrating that this is what [N.P.] needed, the District did not offer her a language-based program;" (3) the District's failure to provide a substantially separate language-based program, and its proposal of 17 pull-outs per week instead "was not objectively

5

reasonable"; and (4) "the [Individualized Educational Programs] proposed for [N.P.] from May 20, 2014 to the present, as amended, were not appropriate because they were not reasonably calculated to confer a meaningful educational benefit based on her needs."

In regard to the 2014-15 school year, Hearing Officer Reichbach ordered the District to reimburse N.P.'s parents for tuition and costs associated with her enrollment at Curtis Blake Day School from January through June 2015.

Through the testimony of witnesses during the hearing, the District had, for the very first time, suggested a placement for N.P. during the 2015-16 school year in its "Focus" program, which it defined as a substantially separate program. At the time of the hearing, this program was not even in existence but the District witnesses testified that there was an intention to begin the program beginning in September 2015. In response to this testimony - and citing the uncertainties with the program and the fact that no IEP had been developed to even offer a placement to N.P. in the program - Hearing Officer Reichbach specifically advised that "it would be premature for me to find that the Focus Program is appropriate to meet [N.P.'s] needs." Accordingly, for the 2015-16 school year, Hearing Officer Reichbach ordered the District to locate or create a substantially separate language-based program for N.P.

During the course of representing N.P. in this matter, Attorney Sankey's office spent 153.6 hours, of which 12 hours were for travel and 21.9 hour were involved in the filing of this fee petition and motion for summary judgment. The Plaintiff has incurred related costs in the amount of $916.48. The District has refused to reimburse the Plaintiff for attorney's fees and costs incurred for legal representation during the proceeding.

### III. LEGAL ARGUMENT

#### A. Legal Standard

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Uncle Henry's, Inc. v. Plaut Consulting Co., 399 F.3d 33, 41 (1st Cir. 2005). Motions for summary judgment are an appropriate vehicle for resolving IDEA-based disputes. *See e.g.* C-B v. Bd. Of Trustees of Pioneer Valley Performing Arts Charter School, 539 F.Supp.2d 474, 482 (D. Mass., 2008).

### B. Plaintiff is a Prevailing Party Entitled to Recover a Reasonable Attorney's Fee under the IDEA.

#### 1. Parents may recover attorney's fees when they are the prevailing party; that is, where litigation results in a significant benefit to the student.

In 20 U.S.C. § 1415(e)(4)(B), Congress enacted a fee-shifting provision which allows parents to recover attorney's fees expended in obtaining special education services for their disabled children when they prevail in a hearing. In enacting this provision, "Congress sought to encourage, assist and make whole 'those (parents) and attorneys who worked to vindicate the rights of handicapped children.'" *See* Doe v. Boston Pub. Sch., 2015 U.S. Dist. LEXIS 7819 (D. Mass. 2015), *quoting* Counsel v. Dow, 849 F.2d 731, 739 (2d Cir. 1988).

The United States Supreme Court has explained that parents may be considered "prevailing" for purposes of an award of attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The "touchstone" of this inquiry is "the material alteration of the legal relationship of the parties," Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989). There must also be a "judicial imprimatur" on the change in the parties' legal relationship. *See* Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &

Human Res., 532 U.S. 598 (2001). The requirement of a "judicial imprimatur" is satisfied by a decision of a hearing officer of the Bureau of Special Education Appeals. *See* C-B v. Bd. Of Trustees of Pioneer Valley Performing Arts Charter School, 539 F.Supp.2d 474, 485-86 (D. Mass., 2008).

Within the First Circuit, the Court of Appeals has noted that in IDEA cases, the phrase, "prevailing party," must be interpreted and applied in the same manner as other federal fee-shifting statutes that use the same phraseology. Maine School Ad. D. No. 35 v. Mr. & Mrs. R, 321 F.3d 9 (1st Cir. 2003). In that case, the court explained:

> The party's success cannot be a hollow victory; it must materially alter the litigant's legal relationship by modifying one party's behavior in a way that directly benefits the other. Thus, the change effected must be material; a purely technical or de minimus victory cannot confer prevailing party status. It follows from the foregoing that a court faced with the need to decide whether a litigant is (or is not) a prevailing party must make a qualitative inquiry into the import of the result obtained.

Id.

**2.  As a direct result of the Hearing Officer's decision in this case, N.P. became entitled to an appropriate educational placement in a language-based program that had been requested by her parents and previously denied by the District.**

N.P. has fully prevailed in this case. Because of their dissatisfaction with the District's refusal to educate their daughter in a substantially separate language-based classroom, the parents filed for a due process hearing. In their hearing request, the parents specifically requested "an order of placement at Curtis Blake Day School for the 2014-15 school year beginning in January 2015, with reimbursement of tuition and costs paid through the date of the order," and, for the 2015-16 school year, they requested "an order of placement in [an] appropriate language-based program."

8

In her decision, Hearing Officer Reichbach expressly found, as set forth in a highlighted paragraph header, that "Hampden-Wilbraham Regional School District's IEPs and Amendments Thereto for [N.P.] *from May 20, 2014 to the Present* Have Not Been Reasonably Calculated to Provide Her with FAPE."[8] See Exhibit B, p. 28 (emphasis added). Accordingly, the Hearing Officer ordered the District to reimburse N.P.'s parents for tuition and costs associated with her enrollment at Curtis Blake Day School during the 2014-15 school year, and to "locate or create" a substantially separate language-based program for N.P. for the 2015-16 school year. Prior to the Hearing Officer's decision, the District had not proposed an IEP which offered to educate N.P. in either a substantially separate or language-based program.

By declaring N.P.'s entitlement to receive special education services at the Curtis Blake Day School during the 2014-15 school year, and in a substantially separate classroom offering language-based instruction during the 2015-16 school year, the Hearing Officer effectuated a material alteration in the legal relationship between N.P. and the District. Prior to the filing of the hearing request, the District had denied that N.P. required such a program and, instead, offered services only in the context of a full inclusion or partial inclusion classroom. Now, solely as a result of this decision, N.P. has a legally enforceable entitlement to be educated in a language-based program in a substantially separate setting. Given the experts' emphasis on the necessity of such specialized programming to overcome N.P.'s significant disabilities, the critical importance of this victory cannot be overstated.

### B. The Defendant Did Not Make a Reasonable Offer to Settle in Order to Limit an Award of Attorney's Fees.

In exercising its discretion to award attorney's fees, it is important for the court to consider that, prior to the hearing in this case, the Defendant did not make an offer to settle the

---

[8] "FAPE" is an acronym for "free and appropriate public education."

dispute. Under the provisions of the IDEA, a school district may protect itself from an award of attorney's fees by making a written offer of settlement at any time more than 10 days prior to the hearing. 20 U.S.C. § 1415(i)(3)(D)(i). If such an offer is made and not accepted, and the parents do not receive relief that is more favorable than the offer, attorney's fees may not be awarded for services performed subsequent to the time of the written offer. Id.

In this case, the District did not make any offer of settlement and is therefore not entitled to any of the insulation provided by the statute.

### C. The Attorney's Fees Sought in this Matter are Reasonable.

The lodestar approach is the method of choice in the First Circuit for calculating fee awards. Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). Under this approach, a court first "calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary." Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014). The court then determines "a reasonable hourly rate or rates – a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience and competence." Id. Multiplying the results of these two inquiries yields the lodestar amount, which may then be adjusted by the court baesd on factors not captured in the lodestar calculation. See Hensley v. Eckerhart, 461 U.S. 424, 434 & n. 9 (1983); Coutin, 124 F.3d at 337.

#### 1. The hourly rate requested by the Plaintiff's attorney is reasonable.

As indicated above, a reasonable hourly rate is based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(C)(3).[9]

Attorney Sankey has been licensed as an attorney for 28 years, and has practiced in the area of special education law since 2000. As indicated in his affidavit, Attorney Sankey is an experienced litigator who offers expertise in the area of special education law. Affidavits from Attorney Sankey, and corroborated by other experienced special education attorneys, confirm that an hourly rate of $275.00 is within the range of reasonable rates charged by experienced counsel throughout Massachusetts, including western Massachusetts where the case originated and in central Massachusetts where the case was tried.

In recognition of the First Circuit's ruling that work performed in preparing and litigating fee awards is compensable, but at "discounted rates due to the comparative simplicity of the task, see Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008), Attorney Sankey has reduced his fee to an hourly rate of $200.00 for the 21.9 hours of work relating to this fee petition and motion for summary judgment. He has also reduced his fee for 12 hours of travel time to one-half of his actual rate, or $137.50 per hour. These reduced amounts should also be considered reasonable.

In considering an award of attorney's fees in IDEA litigation, courts have recognized that students benefit from representation by experienced and knowledgeable counsel. The IDEA has established a detailed statutory and regulatory scheme to ensure that children with disabilities have access to a free appropriate public education. *See, e.g.* 20 U.S.C. §§ 1400 *et. seq.*; 34 C.F.R. §§ 300 *et. seq.* Courts have repeatedly recognized that IDEA cases are complex and that

---

[9] *See* Kingston Sch. Comm. v. Joanna S., 2015 U.S. Dist. LEXIS 54665 (D.R.I. 2015) in which the court approved attorney's fees of $300 and $275 respectively for experienced special education attorneys in Rhode Island.

the practice of special education law requires specialized knowledge. *See, e.g.,* Young v. District of Columbia, 893 F.Supp.2d 125, 131 (D.D.C. 2012) (stating that IDEA litigation requires knowledge of "law, procedure and trial advocacy" and "an understanding of the educational needs of students and services necessary to address a range of developmental, emotional and language-based disorders).

### 2. The number of hours expended on behalf of Plaintiff's case is reasonable.

In representing N.P.'s interests in this case, Attorney Sankey devoted 131.7 hours, culminating with a hearing that occurred over four days and included ten witnesses and eighty exhibits. Cases of this magnitude are labor intensive, requiring review of voluminous records, detailed preparation and client consultation. Furthermore, effective advocacy requires considerable research, not only into the legal issues impacting the case but also regarding the intricacies of the student's disability for purposes of presenting the student's case as well as to cross-examine the district's witnesses concerning the student's progress.

Courts have recognized that parents in IDEA cases who retain sole practitioners are entitled to fees for such tasks performed by the attorney as reviewing records, scanning, filing, faxing and copying documents. *See* Bailey v. District of Columbia, 839 F.Supp. 888, 891 (D.D.C. 1993) (finding that denial of compensation for time that involved simpler litigation tasks when plaintiff's counsel operated as a solo practitioner "would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm"). Activities such as preparing exhibits can entail significant amounts of time when, as here, the case involved hundreds of pages of student records. That said, the only tasks detailed in Attorney Sankey's invoices that could remotely be characterized as administrative occur on June 14, 2015 relating to the identification and preparation of exhibits for hearing. However, the performance

of this task includes strategic decisions as to which exhibits to offer and in what order to present them, both of which required attention from the attorney. Accordingly, all hours billed in this matter should be seen as properly performed by an attorney.

D. **Contrary to Defendant's Claims, N.P. Did Not Achieve Only a Partial Victory**

To streamline the court's consideration of this matter, the anticipated defenses of the District will also be addressed.

In its answer, the Defendant concedes that the Plaintiff prevailed in obtaining reimbursement for N.P.'s placement at Curtis Blake Day School for the 2014-15 school year.[10] However, the Defendant asserts that the Plaintiff did not prevail in her claims for placement for the 2015-16 school year because "[t]he second portion of the relief requested by the Plaintiff, placement at [Curtis Blake Day School] for 2015-2016 school year, was denied by the Hearing Officer." *See* "Preliminary Statement" in Defendant's Answer to Complaint.

The Defendant's position is simply untrue, not supported by any documentation and can be summarily rejected by simply referring to the Plaintiff's Hearing Request in the BSEA action. In the Hearing Request, the parents specifically and unambiguously stated:

> [N.P.'s] parents seek an order of placement at Curtis Blake Day for the 2014-15 school year beginning in January 2015, with reimbursement of tuition and costs paid through the date of the order. They further seek an order of placement in [an] appropriate language-based program for the 2015-16 school year.

*See* Plaintiff's Statement of Facts, **Exhibit E, p. 9.** Earlier in the same Hearing Request, N.P.'s parents expressly explained that they were "seek[ing] an order placing [N.P.] in an appropriate language-based program for the 2015-16 school year and was *not* seeking placement at Curtis Blake Day School for the 2015-16 school year" because "[t]he parents are informed that Curtis

---

[10] Despite conceding that the Plaintiff has prevailed in a significant portion of her case, *see* Defendant's Answer to Complaint, ¶ 1, the Defendant has never made an offer to pay any attorney's fees for this undisputed obligation.

Blake Day School will not be in operation for the 2015-16 school year." *See* Plaintiff's Statement of Facts, **Exhibit E, p. 1 & n. 1.**

During the hearing itself, Hearing Officer Reichbach clearly and succinctly laid to rest any issue as to the nature of relief requested by the parents, stating:

> I am putting on the record a discussion that I had with the attorneys before the lunch break in which we clarified, first of all, **that the hearing request did not seek prospective placement as (sic) Curtis Blake** and that as I mentioned to the attorneys the other day, I do not have enough information in front of me to feel like I could make a prospective placement at Curtis Blake were I to find that the IEP offered by Hampden-Wilbraham did not offer [N.P.] a [free appropriate public education]. So prospective placement for next year at Curtis Blake is not currently on the table.

*See* Plaintiff's Statement of Facts, **Exhibit F, pp. 127-28.**

Furthermore, the Defendant's assertions that it "did in fact locate or create a substantially separate language-based program" for the 2015-16 school year is equally unavailing as a defense. *See* Defendant's Answer to Complaint, ¶ 14. In order to successfully advance this assertion as a defense, the District would need to prove (1) that it actually proposed such a program in a timely manner prior to the hearing and (2) that, if it did, its proposal was not whatsoever motivated by the litigation in this case. The District cannot succeed on either count.

This argument ignores the fact that N.P.'s team did not propose a substantially separate language-based program for N.P. before the hearing officer entered her order. *See* **Exhibit B, Decision, p. 31** (noting that "no IEP had been developed placing [N.P.] in the District's program" at the time of the hearing). Naturally, if the District did intend to offer such a program, one would have expected it to have presented the offer within 10 days of the hearing pursuant to 20 U.S.C. § 1415(i)(3)(D)(i) in order to limit attorney's fees. Therefore, it is abundantly clear that the precipitating factor and the "but for" cause of the District's decision to finally consider offering a substantially separate language-based program to N.P. was the litigation initiated by

N.P.'s parents. Whether or not the District, post-hearing, exercised its discretion to create such a program, the Hearing Officer's decision provided N.P. with an absolute entitlement to these enhanced educational benefits. This decision caused a "material alteration" in the relationship between N.P. and the District for both 2014-15 and 2015-16 school years, imposing a legal obligation on the District to provide what, prior to the hearing, it had steadfastly refused to offer.

Moreover, as noted above, the District's failure to make a written offer to settle the dispute precludes a reduction in attorney's fees. The applicable regulation is clear that, to limit an award of attorney's fees, a school district must make an offer of settlement at least 10 days *prior* to the hearing. 20 U.S.C. § 1415(i)(3)(D)(i). The obvious purpose for this rule, like Fed.R.Civ.P. 68, is to encourage parties to make reasonable offers of settlement *before* the surge of attorney's time and costs which are incumbent in protracted litigation. On the other hand, there is no incentive – and, in fact, there is a disincentive – to reward a defendant for proposing settlement terms in the midst of litigation or, even moreso, by offering to provide the requested relief only *after* the Hearing Officer orders them to do so.

Contrary to the Defendant's assertions, the Plaintiff prevailed on all claims in this case and is entitled to recover reasonable attorney's fees and related costs.

WHEREFORE, the Plaintiff prays for the following relief:

a) that this Court determine that the Plaintiff is the prevailing party pursuant to 20 U.S.C. § 1415(i)(3)(B);

b) that this Court award reasonable attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B); and

c) that this Court award such other relief as it deems appropriate.

Respectfully submitted,

The Plaintiff,
N.P.
By her attorneys.

*Jeffrey M. Sankey*
Jeffrey M. Sankey, BBO# 551062
Sankey Law Offices
25 Braintree Hill Park, Suite 200
Braintree, MA 02184
(781) 930-3127
jsankey@sankeylaw.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on 3/20/16.

*Jeffrey M. Sankey*
Jeffrey M. Sankey