UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| N.P., A MINOR CHILD, BY AND THROUGH HER PARENTS AND NEXT FRIENDS, A.P. and J.P., <br>     Plaintiffs <br> v. <br> HAMPDEN-WILBRAHAM REGIONAL SCHOOL DISTRICT, <br>     Defendant | C.A. No. 3:15-CV-30164KAR |

**HAMPDEN-WILBRAHAM REGIONAL SCHOOL DISTRICT'S
MEMORANDUM IN SUPPORT OF ITS CROSS MOTION
FOR SUMMARY JUDGMENT**

The Hampden-Wilbraham Regional School District, (hereinafter "the District"), respectfully submits its Memorandum in Support of its Cross Motion for Summary Judgment in the above-captioned action.

**STATEMENT OF ISSUES**

The District does not dispute that the Plaintiff prevailed at hearing on the issue of retroactive reimbursement for the Plaintiff's unilateral placement of the Student for the period from January to June, 2015. The District does dispute; however, whether the attorney's fees claimed by the Plaintiff's attorney are in line with the prevailing rate for attorney's fees in Western Massachusetts, the community where this action arose, and maintains that the Plaintiff prevailed on only one (1) of the two (2) issues before the Bureau of Special Education Appeals ("BSEA") pursuant to 20 U.S.C. § 1415(i)(3)(A) and *Hensley v. Eckerhart*, 461 U. S. 424 (1983).

1

## SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted "if the pleadings, depositions, answers to interrogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See*, *Uncle Henry's Inc. v. Plant Consulting Co.*, 399 F.3d 33, 41 (1st Cir. 2005) (quoting Fed.R.Civ.Pro. 56(c)). Cross motions for summary judgment, used here as a vehicle for resolving an IDEA-based dispute, *See, Norton Sch. Comm. V. Mass. Dep't of Educ.,* 768 F.Supp. 900, 904 (D.Mass. 1991), do not alter the basic summary judgment standard, but require the court to determine whether either party deserves judgment as a matter of law on facts that are not disputed.

## STATEMENT OF MATERIAL FACTS

1. On or about March 27, 2015, the Parents filed a Request for Hearing before the Bureau of Special Education Appeals ("BSEA"), seeking retroactive reimbursement for their unilateral placement of their daughter in the Curtis Blake Day School in January 2015.

2. The Request for Hearing also sought "an order of placement in appropriate language-based classroom for the 2015-2016 school year."

3. At the hearing, the Hearing Officer framed the issues as "whether Hampden-Wilbraham's proposed IEPs and amendments thereto in the period from May 20, 2014 to the present were and are calculated to provide Lauren[1] with a free appropriate public education. See Transcript of Hearing, June 23, 2015, page 8, attached hereto and incorporated herein by reference as Exhibit #1, page 8.

---

[1] Lauren is a pseudonym for the Student chosen by the Hearing Officer.

4. The Hearing Officer determined that if the answer to the above question is "no," "I must order reimbursement for the unilateral placement at Curtis Blake Day school in Springfield, Massachusetts and consider ordering the district to place Lauren at Curtis Blake if I find it appropriate going forward for Lauren." See Exhibit #1.

5. On June 30, 2015, following discussion with the attorneys, the Hearing Officer stated, "I do not have enough information in front of me to feel like I could make a prospective placement at Curtis Blake were I to find that the IEP offered by Hampden-Wilbraham did not offer Lauren a FAPE." See Transcript of Hearing, June 30, 2015, page 128, attached hereto and incorporated by reference herein as Exhibit #2.

6. During the hearing, the District presented extensive testimony regarding the Focus Program, a substantially separate language based program at Stony Hill School for the 2015-2016 school year, to be taught by Terrie Henrich. Ms. Henrich has a Master's Degree in Special Education and has been teaching since 1987, including six (6) years as a teacher at Curtis Blake and as a current teacher in their summer clinic. She began working for the District in 2001. See Transcript of Hearing, June 29, 2015, Testimony of Terrie Henrich, attached hereto and incorporated by reference herein as Exhibit #3; see also Exhibit #6, Decision, at pages 24-25. See also Focus Classroom Description, attached here to and incorporated by reference herein as Exhibit #4; this Classroom Description was provided one (1) week before the start of the hearing, on June 16, 2015 as Exhibit #29 of the District's Exhibits for the Bureau of Special Education Appeals Hearing.

7. In her Decision, issued on August 19, 2015, the Hearing Officer noted that Ms. Henrich was described by her current principal as "our most valuable person in the school for phonemic awareness," and that Linda LaFontaine, Principal of the Curtis Blake School,

3

testified that Ms. Henrich "is a skilled reading teacher who 'did a great job integrating the strategies' in the program." See Transcript of Hearing, June 25, 2015, Testimony of Linda LaFontaine, pages 117-120, attached hereto and incorporated by reference herein as Exhibit #5; see also Decision, attached hereto and incorporated by reference herein as Exhibit #6, at page 25.

8. In the Decision, the Hearing Officer found that the District did not provide FAPE to the Student from May 20, 2014 to the present (August 2015). See Exhibit #5, Decision, page 2.

9. The Hearing Officer further considered "whether the [Focus] program proposed by the District for the 2015-2016 school year is an appropriate placement for [Nicole], and if not, whether this program could be made appropriate." See Exhibit #5, Decision, page 2.

10. The Hearing Officer noted that "the proposed Focus Program would include writing, social skills, listening comprehension skills and math, based on the underpinnings of a successful reading program: phonemic awareness, comprehension, fluency and sight words. The program would incorporate executive functioning, organizational, and pragmatic skills. The curriculum would be primarily Lindamood, with comprehension elements – Story Grammar Marker, ThemeMaker – and Social Thinking built in." Students would "receive their reading and math instruction one-on-one or in small groups in a separate classroom with Ms. Henrich." See Exhibit #3, Transcript of Hearing, June 29, 2015, Testimony of Terrie Henrich; see also Exhibit #5, Decision, at page 25. The Hearing Officer took note of Ms. Henrich's testimony that during her time at Curtis Blake, instruction was given using "very nearly the same" programs. Exhibit #6, Decision, page 25.

4

11. Opportunities for inclusion would occur during morning meetings (accompanied by Ms. Henrich), and "specials," when students "interact with typical peers in art, music, the computer and science labs, the library, and the gym." Social Studies and Science instruction "would take place in the general education setting, where students would also be accompanied by Ms. Henrich." See Exhibit #3, Transcript of Hearing, June 29, 2015, Testimony of Terrie Henrich; see also Exhibit #5, Decision, at page 25.

12. The Student's Team met on June 19, 2015 for a "review of programming" for the 2015-2016 school year. The District began to discuss the Focus Program which would be available to third graders, including the Student, for the upcoming school year. The Parent excused herself, stepped outside of the classroom, spoke with her attorney, came back into the room, and left the meeting.

13. The Focus Program had already been developed, approved, and put in place when the Student's Team reconvened on August 31, 2015 to present an Individualized Education Plan ("IEP") for the Focus Program at Stony Hill School.

14. On the same date, the Parent refused the proposed placement and continued the Student's enrollment at the Curtis Blake School. See N-1, Placement Page, and Parent's Rejection Letter, attached hereto and incorporated by reference herein as Exhibit #7.

16. In her Order, the Hearing Officer mandated that "Hampden-Wilbraham Regional School District is further directed to locate or create a substantially separate language-based program for [the Student], with opportunities for inclusion. **Its Focus Program may well be appropriate.**" Decision, page 31 (emphasis added).

17. The Hearing Officer also found that "should the Focus Program materialize as described by Ms. Henrich, in the form of a substantially separate, language-based program with

appropriate peers that incorporates Lindamood Bell and other evidence based reading strategies across the curriculum, with opportunities for inclusion and flexibility based on students' needs, **it would be appropriate for [the Student]**." Exhibit 6, Decision, page 31. (emphasis added)

18. As noted in Paragraph 13, above, the Focus Program had already "materialized" and was in existence in the spring of 2015. The Focus Program began on September 2, 2015; it remains currently in operation and will continue for the 2016-2017 school year. See Exhibit #8, Affidavit of Dr. Debra Tobias.

19. As testified to at the due process hearing, Terrie Henrich is the lead teacher in the Focus Program. The Program provides intensive language-based services to four (4) students similarly situated to the Plaintiff's daughter. *Id.*

20. Had the Parent accepted the proposed IEP and Placement Consent, the Student would be the fifth third-grader placed in the FOCUS Program.

21. To date, the Parent has neither challenged the sufficiency and appropriateness of the Focus Program for her daughter, nor requested retroactive reimbursement for her private unilateral placement at Curtis Blake School for the current school year.

22. Pursuant to the BSEA Hearing Decision, the Focus Program at Stony Hill School, not the Curtis Blake School, is the Student's "stay-put' placement.

**ARGUMENT**

I. **The Plaintiff's Request for Attorney's Fees is not based upon rates prevailing in the community in which this action arose.**

In general, in any action or proceeding brought under §1415 of the Act, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the prevailing party who is the parent of a child with a disability. 20 U.S.C. §1415(i)(3)(c). 34 CFR 300.517.

Fees awarded under §1415(i)(3) of the Act must be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services. *Id*.

The court may reduce the amount of attorneys' fees awarded under §1415 if the court finds that the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience. 20 U.S.C. §1415(i)(3)(f).

The First Circuit defines "prevailing party" in the IDEA context as "[A] prevailing party is any party who 'succeed[s] on any significant issue…which achieves some of the benefits plaintiffs sought in bringing suit.'" *Claudia C-B v. Bd. of Trs. of PVPA Char. Sch.,* 539 F.Supp.2d 474 (D.Mass.2008) Michael Ponsor, District Judge, quoting *Hensley v. Eckerhart,* 461 U.S. [424, 433, 103 S.Ct., 76 L.Ed.2d 40 (1983). The party's success must materially alter the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other. *Claudia C-B v. Bd. of Trs. of PVPA Char. Sch.,* 539 F.Supp.2d 474 (D.Mass.2008) Michael Ponsor, District Judge; *Farrar v. Hobby*, 506 U.S. 103, 111-12, 121 L.Ed.2d 494 (1992). Thus, the change effected must be material. *Maine Sch. Admin. Dist. No. 35 v. Mr. R.,* 321 F.3d 9, 14-15 (1st Cir. 2003).

Hampden-Wilbraham does not dispute that the Plaintiff meets the definition of a "prevailing party" under the IDEA.[2] Nor does the School District take issue with either the hours expended by Plaintiff's counsel or Attorney Sankey's level of experience, skill, and reputation. The School District does maintain, however, that the hourly rate charged by Attorney Sankey unreasonably exceeds that of other experienced and capable special education attorneys in Western Massachusetts.

---

[2] The Hearing Officer did order Hampden-Wilbraham to reimburse the Parent for the costs of placement at the Curtis Blake Day School for the six (6) month period from January to June 2015.

Under the IDEA, a reasonable hourly rate is calculated according to the prevailing market rates in the community charged by attorneys of equivalent skill and experience performing work of similar complexity. *Laura P., v. Haverford School District*, Memorandum and Order, Civil Action No. 07-5395 (E.D. Penn. (2009) *citing Washington*, 589 F.3d at 1035-26   The attorney's usual billing rate is not dispositive. *Id., citing Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).  To determine the prevailing market rate, "a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *I.W. v. The School District of Philadelphia*, United States District Court, E.D. Pennsylvania (January 2016); s*ee also Rode V. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990), *citing  Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir.2001).

The evidence submitted by the Plaintiff that her attorney's hourly rate falls within the norm of Hampden-Wilbraham, the "relevant community" prevailing in this matter, consists of four (4) Affidavits: his own, Attorneys Gillis and Seckler, neither of whom provide an hourly rate, and Attorney Sindelar, who charges the same hourly rate.  Attorney Sankey practices out of Braintree, Attorney Sindelar out of Newton.[3]

In contrast, Hampden-Wilbraham has produced five (5) Affidavits of attorneys who specialize in special education (school) law, each from Hampden or Hampshire Counties, some of whose experience exceeds Plaintiff's counsel, all of whom have an hourly rate far below either Attorney Sindelar or Sankey.  See Affidavits of Rebecca Bouchard, Esq., Fernand Dupere, Esq., and Peter L. Smith, Esq., attached hereto and incorporated by reference herein.  It is axiomatic that special education attorney rates in Western Massachusetts are significantly lower than two hundred

---

[3] Attorney Gillis, who has been practicing special education law for only four (4) plus years, has an office in Topsfield.

seventy-five and 00/100 ($275.00/hour) dollars per hour.  That is a fact of business, just as an eight hundred fifty thousand, and 00/100 ($850,000.00) dollar home in Newton would cost less than one third (1/3) that amount were it located in Wilbraham.[4]

An attorney seeking fees under the IDEA must submit evidence that the requested rate falls within the norm of attorneys in the relevant community.  *I.W.; See, Rode*, 892 F.2d at 183.  This the plaintiff did not do.  Hampden-Wilbraham respectfully requests that Attorney Sankey's hourly rate be reduced by twenty-five (25%) percent to two hundred six and 25/100 ($206.25) dollars, an amount that is only slightly more than the highest hourly rate charged by similarly experienced special education attorneys in the Pioneer Valley.

**II.     The Court should Adjust the Lodestar Amount of Plaintiff's Attorney's Fees Based Upon the Partial Success Obtained.**

The degree of success achieved in the litigation is a "critical" factor in fixing the amount of an award.  *Texas State Teachers Ass'n v. Garland Indep. Sch. District*, 489 U.S. 782, 789-90 (1983), 109 S.Ct. at 1492 (1983).  *See, also, Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 574-75 (1992).  The degree of success governs the amount of attorney fees awarded, not whether plaintiff qualifies as a prevailing party.  *Id*.  "[T]he extent of a plaintiff's success [for purposes of a statute authorizing fee shifting] is a practical question, involving a qualitative, as well as a quantitative, judgment."  *Kerry B. v. Union 53 Schools*, 882 F.Supp. 184 (D.Mass.1995), *citing Aubin v. Fudala*, 782 F.2d 287, 290 (1st Cir.1986) (citing cases).

"Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Nadeau v. Helgemoe*, 581 F.2d 275,

---

[4] Median home prices: 2013 – Newton $855,000.00; Topsfield $466.250.00; Braintree $348,250.00; Wilbraham $227,736; Hampden $244,900.00.  See, Mass. Single-family median sale prices *The Boston Globe; see also Zillow.com.*.

9

278-279 (CA1 1978). It remains for the district court to determine what fee is "reasonable." *Id.* The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id* The product of reasonable hours times a reasonable rate does not end the inquiry. *Hensley,* at 434. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important faction of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. *Id.*

The proceeding at issue cannot simply be viewed as two (2) discrete claims. Reimbursement for placement at the Curtis Blake Day School for the second half of the 2014-2015 school year and funding for continued placement at Curtis Blake for the current (2015-2016) school year versus placement in the District's Focus Program share many similar facts as well as many distinct features.[5] Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. The result is what matters. *Hensley*, at 435.

Had the hearing officer ordered that Hampden-Wilbraham continue to fund the Student's placement at Curtis Blake, the Plaintiff would be entitled to one hundred (100%) percent of the appropriate lodestar amount. On the other hand, given that Plaintiff achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate would result in an excessive amount. This is true even though the Plaintiff's claims were, in part, interrelated, nonfrivolous, and raised in good faith. *Hensley*, at 436. Again, the most critical factor is the degree of success obtained. *Mrs. M. v. Tri-Valley Cent. Sch. Dist.,*

---

[5] For example, the status of Curtis Blake beginning in September 2015, the status and nature of the Focus Program, and the qualifications and skill of Terrie Henrich, special education teacher in the Focus Program.

363 F.Supp.2d 566 (S.D.N.Y. 2002)(fee request cut by fifty [50] percent), *citing G.M. by and through R.F. v. New Britain Bd. of Educ.,* 173 F.3d 77, 81 (2nd Cir. 1999).

Despite Plaintiff's argument that her Hearing Request did not specifically request continued placement at Curtis Blake for the current school year, a review of the BSEA Decision and hearing transcript, as well as the material facts, lead to the inescapable conclusion that the question of the Student's educational placement for the 2015-2016 school year – in-district in the FOCUS program or out-of-district at the Curtis Blake School – was one (1) of two (2) equally important[6] issues before the Hearing Officer.

The hearing transcript in this matter contains one thousand and seventy-three (1073) pages, approximately four hundred and eighty-eight (488) of which are specifically devoted to the Focus Program, Ms. Henrich, the Focus Program teacher, and the uncertain status of the Curtis Blake School after the 2014-2015 school year ended. There was no objection to introduction of this testimony at the hearing given its relevance to the two (2) issues framed by the Hearing Officer.

It is spurious for the Plaintiff to argue that Hampden-Wilbraham's development and implementation of the FOCUS program was what she was seeking for her daughter in this action. The FOCUS program was offered and proposed to the Plaintiff, but she rejected it. See Exhibit #6, N-1, PL-1, rejection letter. She, again, placed the Student privately at Curtis Blake beginning in September 2015. The Focus Program has been operating in the Student's absence the entire school year. See Exhibit #8, Affidavit of Debra L. Tobias. It has been, and remains, an appropriate program for the Student. See Exhibit #6, Hearing Officer's Order.

---

[6] The cost of a full-year placement at Curtis Blake (2015-2016 school year) would be double the cost of the January through June reimbursement awarded to the Plaintiff. Additionally, "stay-put" under the Decision is the Focus Program at Stony Hill School.

In exercising its broad discretion in reaching its determination of "what fee is reasonable" given Plaintiff's partial success, See, *Zak L. v. Cambridge School Committee*, 44 F.Supp.2d 395 (D.Mass.1999), Hampden-Wilbraham respectfully submits that there were two (2) issues, both important, in this matter, to wit: reimbursement for the second half of the 2014-2015 school year, and placement for the 2015-2016 school year. The Parent won the first; the School District won the second. Common sense and reasonableness suggest a fifty-fifty (50/50) split of Plaintiff's attorney's fees. *Hensley* requires no more, no less.

## **Summary**

Given that the Plaintiff's counsel's hourly rate exceeds the highest rate of experienced special education attorneys in Western Massachusetts, and given the Plaintiff's partial success in this matter, Hampden-Wilbraham respectfully requests the following:

1. Plaintiff's attorney's hourly rate be reduced by twenty-five (25%) percent; and

2. The adjusted lodestar amount be reduced by fifty (50%) percent, reflecting the degree of success obtained.

Respectfully submitted,

HAMPDEN-WILBRAHAM
REGIONAL SCHOOL DISTRICT

By its attorney,

/s/ Peter L. Smith_____
Peter L. Smith, Esq.
200 North Main Street, Suite 8
East Longmeadow, MA 01028
(413) 525-1136
(413) 525-4128
BBO# 542544
plsmithlawoffice@gmail.com

Dated: March 1, 2016

**CERTIFICATE OF SERVICE**

   I, Peter L. Smith, hereby certify that on March 1, 2016, this document was filed through the Court's ECF system and will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as non-registered participants by first class mail on March 1, 2016.

              /s/ Peter L. Smith_____
              Peter L. Smith