UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| N.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-30164-KAR |
| | ) | |
| HAMPDEN-WILBRAHAM REGIONAL | ) | |
| SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT
(Dkt. Nos. 14 and 18)

I.    INTRODUCTION

This is an action brought by N.P. ("Plaintiff"), a minor child, who seeks from the

Hampden-Wilbraham School District ("Defendant") an award of the attorney's fees and costs

incurred in Plaintiff's pursuit of an administrative claim before the Bureau of Special Education

Appeals ("BSEA") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1415(i)(3)(B)(i)(I).  Plaintiff has moved for summary judgment on the basis that her

requested fees are reasonable and that she prevailed on all of her claims before the BSEA (Dkt.

Nos. 1, 14).  Defendant disputes both contentions in its cross motion for summary judgment.  It

asks for a reduction of Plaintiff's counsel's hourly rate to reflect what it claims is the prevailing

market rate of attorneys in the local geographic area, and a determination that Plaintiff succeeded

on only one of her two claims (Dkt. No. 18).  After considering the parties' cross motions, for the

reasons set forth more fully below, the court grants Plaintiff's motion and orders judgment in

favor of the Plaintiff for attorney's fees in the amount of $38,887.50 and for costs in the amount

of $916.48.  Defendant's motion is denied.

II.   BACKGROUND[1]

Plaintiff is disabled within the meaning of the IDEA due to attention deficit hyperactivity disorder (ADHD), dyslexia, and a specific learning disability in reading (Dkt. No. 16 ¶¶3, 4; Dkt. No. 16-2 at 3, 29).   Plaintiff's disabilities, along with "significant memory and processing deficits," impede her ability to read (Dkt. No. 16 ¶5; Dkt. No. 16-2 at 8).   Plaintiff attended first grade at a private school during the 2013-2014 school year (Dkt. No. 16-2 at 6 & n.14).   After Dr. Joanna Miles conducted a psychoeducational assessment of Plaintiff in April 2014, Dr. Miles recommended that Plaintiff be placed in a substantially separate language-based program due to her learning disability in reading (Dkt. No. 16 ¶6; Dkt. No. 16-2 at 8-9, 29-30).   In May 2014, Dr. Miles's evaluation was shared with Defendant and a team meeting was held to develop Plaintiff's second grade Individualized Education Program ("IEP") for the 2014-2015 school year (Dkt. No. 16 at ¶7; Dkt. No. 16-2 at 9).[2]   The IEP that resulted from this meeting proposed an

---

[1] These facts are drawn from the following documents:  Plaintiff's statement of material facts (Dkt. No. 16); Defendant's statement of material facts (Dkt. No. 20): Plaintiff's response to Defendant's statement of material facts (Dkt. No. 26); and the BSEA hearing officer's decision, which both parties submitted to support their statements of material facts (Dkt. Nos. 16-2, 24-5). *See* Fed. R. Civ. P. 56(c)(3), (e); Local Rule 56.1.  The court cites the hearing officer's decision as "Dkt. No. 16-2."  Although Plaintiff lodged specific objections to some of Defendant's material facts (Dkt. No. 26), Defendant did not respond to Plaintiff's statement.  As a result, the court considers Plaintiff's statements and Defendant's undisputed statements to be admitted.  *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties").  The court will address the disputed facts as they arise.

[2] "The IEP is the primary safeguard for assuring the provision of [a free appropriate public education] to disabled children." *L.P. v. Longmeadow Pub. Sch.*, Civil Action No. 10-40190-FDS, 2012 WL 5200078, at *1 (D. Mass. Oct. 18, 2012).  "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005).  "The development of an IEP requires the participation of a team of individuals, including the parents, the child's teacher, designated specialists, and a representative of the [local education agency]." *Roland M. v. Concord Sch.*

inclusion program at Defendant's Stony Hill School ("Stony Hill") with support in the general education classroom for math and written expression and with removal from the classroom (so-called "pull out" sessions) five times per week for forty-five minutes each for "reading/decoding" (Dkt. No. 16 ¶8; Dkt. No. 16-2 at 10).  Plaintiff's parents accepted the services in the IEP, but rejected Defendant's failure to place Plaintiff in a substantially separate language-based program as Dr. Miles had recommended (Dkt. No. 16 ¶9; Dkt. No. 16-2 at 10).

In September 2014, Plaintiff began the second grade in a full-inclusion classroom of more than twenty students at Stony Hill (Dkt. No. 16 ¶10; Dkt. No. 16-2 at 10).  Plaintiff received services under the May 2014 IEP, which included pull-out sessions for reading and phonics (*id.*).  Plaintiff's parents engaged Alicia Ziegler, a speech and language pathologist, to evaluate Plaintiff in September 2014 (Dkt. No. 16 ¶11; Dkt. No. 16-2 at 12).  After Ms. Ziegler conducted tests and observed Plaintiff at Stony Hill, Ms. Ziegler diagnosed Plaintiff with a moderate receptive language disorder and with dyslexia, and recommended Plaintiff's placement in a language-based program that included instruction by a teacher who was "trained in an evidence based reading program that incorporates phonological awareness" (Dkt. No. 16 ¶¶11, 12; Dkt. No. 16-2 at 12-16, 29-30).  As a result of Ms. Ziegler's assessment, Plaintiff's team amended her IEP in November 2014 by adding additional pull-out sessions in math and speech and language, for a total of twelve pull-out sessions per week (Dkt. No. 16 ¶13; Dkt. No. 16-2 at 17).

Plaintiff's parents notified Defendant on December 2, 2014 that Plaintiff would attend the private Curtis Blake Day School ("CBDS") due to their dissatisfaction with Plaintiff's program at

---

*Comm.*, 910 F.2d 983, 988 (1st Cir. 1990) (citing 20 U.S.C. § 1401(19); 34 C.F.R. § 300.344; 603 Mass. Code Regs. § 311.0).

Stony Hill (Dkt. No. 16 ¶14; Dkt. No. 16-2 at 18).  In response, Defendant developed a new IEP

in December 2014 (Dkt. No. 16 ¶15; Dkt. No. 16-2 at 18-19).  The new IEP, which Defendant

continued to characterize as a "full-inclusion program," added four pull-out sessions (Dkt. No. 16

¶¶15, 16; Dkt. No. 16-2 at 19).  This IEP increased the time Plaintiff spent outside the classroom

to sixteen sessions per week (Dkt. No. 16 ¶¶16, 32; Dkt. No. 16-2 at 19). [3]

Plaintiff attended the CBDS from January through June 2015 (Dkt. No. 16-2 at 21, 24).

The CBDS was approved by the Massachusetts Department of Education ("DOE") to provide

special education services for students in kindergarten through grade 9 with language-based

learning disabilities (Dkt. No. 16 ¶21; Dkt. No. 16-2 at 21).  Linda Lafontaine, the principal of

the CBDS, testified, and the BSEA hearing officer found, that "the programs and methodology

used with [Plaintiff] at [the CBDS] [were] necessary for her to make meaningful progress in

language and reading" (Dkt. No. 16-2 at 24, 31-32).

On or about March 27, 2015, Plaintiff's parents, through counsel, filed a due process

complaint and requested a hearing before the BSEA pursuant to 20 U.S.C. § 1415(b)(6), (f) (Dkt.

No. 16 ¶19; Dkt. No. 20 ¶1).  They sought retroactive reimbursement for their unilateral

placement of Plaintiff at the CBDS in January 2015, and "an order of placement in [an]

appropriate language-based program for the 2015-16 school year" (Dkt. No. 16 ¶20; Dkt. No. 16-

5 at 13; Dkt. No. 20 ¶¶1, 2).

---

[3] Dr. Miles and Ms. Ziegler, who testified on Plaintiff's behalf at the BSEA hearing, indicated
that the December 2014 IEP was not appropriate for Plaintiff because it contained too many pull-
out sessions and did not reflect a language-based program (Dkt. No. 16-2 at 20-21).  According
to the BSEA hearing officer, the program was more accurately characterized as a "partial
inclusion" program due to the percentage of time that Plaintiff spent outside the general
education classroom (Dkt. No. 16-2 at 19 n.39, 31).

On June 11, 2015, Plaintiff's mother was invited to attend a team meeting, which was scheduled to be held three days before the commencement of the BSEA hearing, to "[r]eview . . . programming" (Dkt. No. 16-2 at 25; Dkt. No. 20 ¶12).  But when Plaintiff's mother arrived at the meeting, the school principal told her that it was "a 'resolution meeting to discuss programming issues'" (Dkt. No. 16-2 at 25).[4]  Although the principal was corrected, Plaintiff's mother left the meeting (*id.*).[5]

The due process hearing extended over four days:  June 23, 25, 29, and 30, 2015 (Dkt. No. 16 ¶24; Dkt. No. 16-2 at 2).  The BSEA hearing officer identified the issues for her resolution as follows:  (1) whether the IEPs and their amendments, which Defendant developed from May 2014 to June 23, 2015, and which were in effect when Plaintiff's parents unilaterally placed her at the CBDS, were reasonably calculated to provide Plaintiff with a free appropriate public education ("FAPE") in the least restrictive environment; (2) if not, whether Plaintiff's placement at the CBDS was appropriate, which would entitle her parents to reimbursement; and (3) whether Defendant's proposed [Focus] [P]rogram for the 2015-2016 school year was an appropriate placement for Plaintiff and, if not, whether it could be made appropriate (Dkt. No. 16

---

[4] Within fifteen days of receiving notice of the parents' complaint for a due process hearing, the local education agency is required to convene a meeting of the parents and members of the IEP team "where the parents . . . discuss their complaint, and the facts that form the basis of the complaint, and the local education agency is provided the opportunity to resolve the complaint," unless both parties agree to waive the meeting or agree to mediation.  20 U.S.C. § 1415(f)(1)(B).  Because Plaintiff filed her complaint on or about March 27, 2015 (Dkt. No. 16 ¶19), this meeting was convened beyond the fifteen-day statutory time period of 20 U.S.C. § 1415(f)(1)(B).

[5] Defendants' statement of material facts differs from the hearing officer's findings regarding this event (Dkt. No. 20 ¶12).  Plaintiff objects to Defendant's statement of material facts on this point on the ground that its statement is not supported by "page references to affidavits, depositions and other documentation" as required by the local rule (Dkt. No. 26 ¶12).  *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1.  *Compare Powell v. Pittsfield*, 143 F. Supp. 2d 94, 101 n.1 (D. Mass. 2001) (court "has . . . to ignore proffered 'facts' that contain no record citation").

¶25; Dkt. 16-2 at 3; Dkt. No. 20 ¶¶3, 9).  Plaintiff's parents did not request prospective placement

at the CBDS for the 2015-2016 school year because prior to their request for a hearing, they

learned that the CBDS would lose its status as a DOE approved school in June 2015 and would

not operate during the next school year (Dkt. No. 16 ¶¶22, 23; Dkt. No. 16-2 at 21 n.46; Dkt. No.

16-5 at 5 & n.1).  As a result, the hearing officer did not consider prospective placement at the

CBDS for the 2015-2016 school year (Dkt. No. 16-2 at 21 n.46; Dkt. No. 16-6 at 4; Dkt. No. 20

¶5).

At the hearing, Defendant proposed the Focus Program at Stony Hill as an appropriate

placement for Plaintiff during the 2015-2016 school year and presented testimony describing the

program as being a substantially separate language-based program for three to five students (Dkt.

No. 16-2 at 25-26; Dkt. No. 20 ¶6).  Terrie Henrich, who taught at the CBDS for six years and

continued to teach in their summer clinic, was the designated teacher for the Focus Program

(Dkt. No. 16-2 at 25-26; Dkt. No. 20 ¶¶6, 7).

> The proposed Focus Program would include writing, social skills, listening
> comprehension skills and math, based on the underpinnings of a successful reading
> program:  phonemic awareness, comprehension, fluency and sight words.  The program
> would incorporate executive functioning, organizational and pragmatic skills.  The
> curriculum would be primarily Lindamood, with comprehension elements – Story
> Grammar Marker, ThemeMaker – and Social Thinking built in.

(Dkt. No. 16-2 at 26; Dkt. No. 20 ¶10).  According to Ms. Henrich's testimony, the CBDS used

"'very nearly the same programs'" during the time that she taught there (Dkt. No. 16-2 at 26 n.55;

Dkt. No. 20 ¶10).  There would be opportunities for inclusion in addition to the program in the

separate classroom (Dkt. No. 16-2 at 26; Dkt. No. 20 ¶11).

The BSEA hearing officer found that Defendant's failure to offer Plaintiff a substantially

separate language-based program "that applies evidence-based approaches and employs

multisensory instruction consistently across [Plaintiff's] day," as Dr. Miles and Ms. Ziegler

recommended, deprived Plaintiff of a FAPE for the 2014-2015 school year (Dkt. No. 16 ¶¶27, 30, 31, 33; Dkt. No. 16-2 at 29-30, 31; Dkt. No. 20 ¶8).  Because the CBDS provided an appropriate program, Plaintiff's parents were entitled to reimbursement by Defendant for tuition and costs associated with her enrollment at the CBDS from January to June 2015 (Dkt. No. 16 ¶34; Dkt. No. 16-2 at 31-32).

The hearing officer also ordered Defendant "to locate or create a substantially separate language-based program for [Plaintiff], with opportunities for inclusion" (Dkt. No. 16 ¶35; Dkt. No. 16-2 at 32; Dkt. No. 20 ¶16).  Due to the fact that "no IEP had been developed placing [Plaintiff] in the [Focus] [P]rogram," the hearing officer indicated that it was premature for her to determine whether the program was appropriate to meet Plaintiff's needs (Dkt. No. 16 ¶35 & n.3; Dkt. No. 16-2 at 32).[6]  The hearing officer found, however, that the Focus Program "may well

---

[6] Plaintiff lodged objections to several of Defendant's statements of material fact about the Focus Program, mainly on the ground that they are not material to this court's decision.  Defendant's statement indicates that the Focus Program "had been developed [and] approved" during the "spring of 2015" and was in place before Plaintiff's team met on August 31, 2015 to propose the Focus Program for her IEP (Dkt. No. 20 ¶¶13, 18).  Plaintiff objected to Defendant's statement about the program's existence prior to the June 2015 hearing on several grounds, including the fact that Defendant failed to support the statement with record references (Dkt. No. 20 ¶13; Dkt. No. 26 ¶13).  *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1.  In addition, Plaintiff denies that the program existed in the spring of 2015 based on the BSEA hearing officer's finding that "[t]here was some inconsistency among witnesses for [Defendant] as to when exactly the Focus [P]rogram came into being" and that it "was still in its formative stages at the time of the hearing" in June 2015 (Dkt. No. 16-2 at 27, 32; Dkt. No. 26 ¶18).

Plaintiff also asks the court to ignore certain of Defendant's other statements about the Focus Program, specifically that:  on August 31, 2015, Plaintiff's parents refused the proposed placement in the Focus Program and continued Plaintiff's placement at the CBDS (Dkt. No. 20 ¶14; Dkt. No. 26 ¶14); Ms. Henrich began teaching four students "similarly situated to" Plaintiff in the Focus Program on September 2, 2015 (Dkt. No. 20 ¶¶18, 19; Dkt. No. 26 ¶¶18, 19); Plaintiff would have been the fifth student in the Focus Program if her parents had accepted the program on August 31, 2015 (Dkt. No. 20 ¶20; Dkt. No. 26 ¶20); Plaintiff's parents have not challenged the Focus Program as an appropriate placement for Plaintiff or requested reimbursement for Plaintiff's unilateral placement at the CBDS for 2015-2016 (Dkt. No. 20 ¶21; Dkt. No. 26 ¶21); and the Focus Program will continue for the 2016-2017 school year (Dkt. No. 20 ¶18; Dkt. No. 26 ¶18).  Plaintiff objected to these asserted facts on the ground that they are

be" appropriate for Plaintiff if it materialized as Ms. Henrich described it; that is, as a

"substantially separate, language-based program with appropriate peers that incorporates

Lindamood Bell and other evidence based reading strategies across the curriculum, with

opportunities for inclusion and flexibility based on students' needs" (Dkt. No. 16-2 at 32; Dkt.

No. 20 ¶17).

Because Defendant refused to reimburse Plaintiff for attorney's fees and costs incurred

for legal representation during the BSEA hearing, Plaintiff filed a complaint in this court (Dkt.

No. 16 ¶38; Dkt. No. 16-1 ¶16). [7]  The parties have filed cross motions for summary judgment

---

not material to the court's determination of attorney's fees for representation at the impartial due
process hearing before the BSEA, which was brought under 20 U.S.C. § 1415 (b)(6), (f), because
they refer to events that occurred after the BSEA hearing concluded in June 2015 and after the
hearing officer issued her decision on August 19, 2015 (Dkt. No. 16-2; Dkt. No. 26 ¶¶14, 18, 19,
20, 21).  Put another way, these disputed facts were not related to the outcome of the § 1415
administrative proceeding, which is the court's focus in determining an attorney's fee award  *See*
20 U.S.C. § 1415(i)(3)(B)(i) ("In any action or proceeding brought under this section, the court,
in its discretion, may award attorneys' fees as part of the costs . . . to a prevailing party who is the
parent of a child with a disability").  *Compare Williamson Cty. Bd. of Educ. v. C.K.*, No. 3:07-
0826, 2009 WL 2066251, at *1 (M.D. Tenn. 2009) ("Fees may be awarded under the IDEA for
time spent on state administrative proceedings").  Although a court that hears the appeal of an
agency's decision under 20 U.S.C. § 1415(i)(2)(A) "shall hear additional evidence at the request
of a party," 20 U.S.C. § 1415 (i)(2)(C)(ii), this case is not an appeal of the BSEA's decision.  *See
Burlington v. Dep't of Educ.,* 736 F. 2d 773, 790 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985).
Defendant does not cite any law that permits the court, in a determination of attorney's fees under
cross motions for summary judgment, to supplement the facts with evidence that was not
presented to the BSEA hearing officer.

Finally, Plaintiff denied Defendant's statement that the BSEA hearing officer determined
that the Focus Program, not the CBDS, was Plaintiff's "'stay put' placement," and objected on the
ground that Defendant stated a legal conclusion (Dkt. No. 20 ¶22; Dkt. No. 26 ¶22).  In addition
to Plaintiff's objections to this assertion, Defendant failed to comply with the requirements for
reference to supporting documentation.  *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1.

[7] Defendant did not make a written offer of settlement to Plaintiff's parents more than ten days
prior to the commencement of the BSEA hearing (Dkt. No. 16 ¶28).  If Defendant had made a
timely written offer of settlement, which proposed to reimburse Plaintiff's parents for the CBDS
tuition and costs and to place Plaintiff in a substantially separate language-based program for the
2015-2016 school year, Plaintiff would not be entitled to an award of attorney's fees and costs
"for services performed subsequent to the time of [the] written offer of settlement . . . ."  20

(Dkt. Nos. 14, 18), and statements of material facts (Dkt. Nos. 16, 20). Plaintiff responded to

Defendant's statement of material facts (Dkt. No. 26), and opposed the cross motion for summary

judgment (Dkt. No. 25). In turn, Defendant responded to Plaintiff's opposition (Dkt. No. 27).

II.   DISCUSSION

A.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a

motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the moving party is entitled to a
> judgment as a matter of law.

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply

require [the court] to determine whether either of the parties deserves judgment as a matter of

law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107

(1st Cir. 2001). *See Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.

1996). "When deciding cross-motions for summary judgment, the court must consider each

motion separately, drawing inferences against each movant in turn." *Reich v. John Alden Life

Ins. Co.,* 126 F.3d 1, 6 (1st Cir. 1997). Summary judgment may be appropriate in an attorney's

fee case pursuant to the IDEA. *See Mary G.-N. v. Northampton*, Civil Action No. 14-30113-

MGM, 2015 WL 9462080, at *1 (D. Mass. Dec. 28, 2015).

B.   Legal Standard for an Award of Attorney's Fees under the IDEA

The IDEA provides that "[i]n any action or proceeding brought under this section, the

court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a

---

U.S.C. § 1415(i)(3)(D)(i). These services included Attorney Sankey's representation of Plaintiff
at the BSEA hearing and his preparation of the fee petition to this court.

prevailing party who is the parent of a child with a disability." § 1415(i)(3)(B)(i)(I). "The trial

court's discretion with respect to fee awards is extremely broad." *Lipsett v. Blanco,* 975 F.2d

934, 937 (1st Cir. 1992). *See Kerry B. v. Union 53 Pub. Sch.*, 882 F. Supp. 184, 190 (D. Mass.

1995).

"The ultimate goal [of a statutory fee award] 'is to award fees which are adequate to

attract competent counsel, but which do not produce windfalls.'" *Grendel's Den, Inc. v. Larkin,*

749 F.2d 945, 950 (1st Cir. 1984) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 430 n.4 (1983)).

Although "[t]he district court must carefully review the request for fees, *Pilkington v.*

*Bevilacqua,* 632 F.2d 922, 925 (1st Cir. 1980), [a] request for attorneys' fees . . . 'should not

result in a second major litigation.'" *Mass. Dep't of Pub. Health v. Sch. Comm. of Tewksbury*,

841 F. Supp. 449, 456 (D. Mass. 1993) (quoting *Hensley,* 461 U.S. at 437).

"Courts have analyzed the [fee award] provisions of IDEA consistently with the

attorneys' fees provision of the Civil Rights Act, 42 U.S.C. § 1988(b)." *Zayas v. Puerto Rico*,

451 F. Supp. 2d 310, 314 (D.P.R. 2006) (quoting *Phelan v. Bell,* 8 F.3d 369, 373 (6th Cir.1993)).

> Accordingly, in adjudicating a request for attorneys' fees under the IDEA, the Court
> needs to determine whether: (1) a party is in fact a "prevailing party" under IDEA; (2) the
> compensation sought is reasonable (i.e. calculation of the lodestar); and (3) there are any
> additional but exceptional considerations that may require to adjust upward or downward.

*Zayas,* 451 F. Supp. 2d at 314 (quoting *Hensley,* 461 U.S. at 433–34).

"Before calculating reasonable fees the court must first determine whether the party

requesting fees has crossed the 'statutory threshold' to claim 'prevailing party' status." *Mass.*

*Dep't of Pub. Health*, 841 F. Supp. at 456 (citing *Hensley,* 461 U.S. at 433 & n.7).  Defendant

does not dispute Plaintiff's status as the prevailing party under the statute and, therefore, does not

dispute that a reasonable award of fees to Plaintiff is warranted (Dkt. No. 19 at 1).

"Once a plaintiff qualifies as a prevailing party, the court must 'determine what fee is reasonable.'" *Zak L. ex rel. Tracy L. v. Cambridge Sch. Comm.*, 44 F. Supp. 2d 395, 400 (D. Mass. 1999) (quoting *Hensley*, 461 U.S. at 433). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. This "'lodestar' [is] a threshold point of reference which is subject to additions or deductions for specific reasons." *Grendel's Den, Inc.,* 749 F.2d at 950 (in the context of 42 U.S.C. § 1988). *See L.P. v. Longmeadow Pub. Sch.*, Civil Action No. 10-40190-FDS, 2012 WL 5200078, at *2 (D. Mass. Oct. 18, 2012) ("In the First Circuit, a reasonable fee is typically determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate"). The last step in the decision on a fee award involves a determination of whether an upward or downward adjustment of the lodestar is appropriate. *See Lipsett*, 975 F.2d at 937 ("Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustments in certain circumstances") (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

The parties' cross-motions for summary judgment raise two legal questions:   first, whether Plaintiff's attorney's hourly rate of $275 for services related to the BSEA hearing is reasonable, or whether it should be reduced by twenty-five percent to reflect what Defendant asserts is the hourly rate of local attorneys; and second, whether Plaintiff prevailed on both claims before the BSEA, or whether the lodestar should be reduced by fifty percent due to her alleged partial success. The court concludes that Plaintiff's attorney's hourly rate is reasonable, and that Plaintiff either obtained the results that she sought from the BSEA, or that her two requests for relief cannot be severed from each other because they involved a "common core of

facts." *Mass. Dep't of Pub. Health*, 841 F. Supp. at 457.  Accordingly, Plaintiff's motion will be allowed, and Defendant's motion will be denied.

C.   <u>Reasonable Hourly Rate</u>

The IDEA permits the court to award attorney's fees that are "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).  Plaintiff bears the burden to demonstrate that the hourly rate is reasonable.  *See Mary G.-N.*, 2015 WL 9462080, at *3 ("The burden is on the party seeking attorney's fees to document the number of productive hours and the reasonableness of the hourly fee sought") (citing *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011)); *L.P.*, 2012 WL 5200078, at *5 (citing *Hensley*, 461 U.S. at 437).  In order to sustain the burden, the fee applicant is required to provide sufficient documentation to support the fee request, including "counsel's contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates." *Hutchinson*, 636 F.3d at 13.  In addition, "the First Circuit requires that affidavits be submitted attesting to the reasonableness of the rates by knowledgeable attorneys unconnected to the underlying litigation." *Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 329 (D. Mass. 2009) (citing *Bordanaro v. McLeod*, 871 F.2d 1151, 1168 (1st Cir. 1989)).  *See also Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003) ("The Plaintiff[] bear[s] the burden of providing this [c]ourt with affidavits, as well as other forms of evidence, that establish [the attorney's] skill and experience and inform the [c]ourt of the prevailing market rate in the community for attorneys with such qualifications").

Plaintiff was represented by a solo practitioner, Attorney Jeffrey M. Sankey of Braintree, Massachusetts, who had some fifteen years of experience practicing special education law and representing disabled children and adults (Dkt. No. 14-1 ¶¶2, 4).  Plaintiff submitted Attorney

Sankey's contemporaneous billing records, which described the work that he performed on

specific dates, and the amount of time spent on each task (Dkt. No. 14-3).  *See Mary G.-N.*, 2015

WL 9462080, at *3 (citing *Grendel's Den Inc.*, 749 F.2d at 952).  A chart summarizes the

information contained in the itemized bills (Dkt. No. 14-2).  The chart shows that counsel

charged $275 per hour for 119.7 hours of work on the BSEA appeal in the instant case, but

reduced his hourly rate to $137.50 for 12 hours of travel time, and to $200 for the 21.9 hours that

he spent preparing the petition to this court (Dkt. No. 14-1 ¶¶3, 5, 6, 7; Dkt. No. 14-2). [8]  In 2013,

the Massachusetts Commission Against Discrimination awarded him an hourly rate of $250 for

work primarily performed in 2011 and 2012 on behalf of a successful plaintiff in an employment

discrimination case (Dkt. No. 14-1 ¶9).

       Defendant, on the other hand, challenges counsel's hourly rate of $275 per hour as being

the rate charged by "greater Boston attorneys" and asks that it be reduced by twenty-five percent

to $206.25 per hour (Dkt. No. 18 at 2).  This request for a reduction in Plaintiff's counsel's hourly

rate is based on the attestations of Defendant's counsel and four attorneys from western

Massachusetts who practice education law (Dkt. Nos. 22, 22-1, 22-2, 22-3, 22-4).  Only two of

these attorneys, however, have the years of the experience that are commensurate with Attorney

Sankey's (Dkt. No. 22, 22-2).  These attorneys' hourly rates were $175 and $200 (*id.*).

       Plaintiff's submissions are sufficient to establish that counsel's customary hourly rate of

$275 per hour for the hearing-related work is reasonable and is based on rates prevailing in the

---

[8] The due process hearing extended over four days during which time ten witnesses testified and
the parties introduced a total of eighty exhibits (Dkt. No. 16 ¶26; Dkt. No. 16-2 at 2).  Defendant
does not dispute Attorney Sankey's level of skill, reputation, and experience and the amount of
time that he expended, and does not appear to challenge counsel's hourly rates for travel and for
preparation of the fee petition and the amount of costs (Dkt. No. 19 at 7).

community for "the kind and quality of services furnished" (Dkt. No. 14-1 at ¶5). [9]  20 U.S.C. §

1415(i)(3)(C).  "At least one court of appeals has found that the best evidence of a reasonable

hourly rate is the rate 'customarily charged by counsel . . . .'"  *Rosie D.*, 593 F. Supp. 2d at 330

(quoting *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986)).  *See also Black Grievance

Comm. v. Phila. Elec. Co.*, 802 F. 2d 648, 652 (3d Cir. 1986), *cert. granted, vacated by* 483 U.S.

1015 (1987) ("The reasonable value of an attorney's time is the price that time normally

commands in the marketplace, which is generally reflected in the attorney's normal billing rate").

"It is significant, in addition, that the hourly rates requested in this case are strongly

supported by [three] affidavits submitted by knowledgeable, independent attorneys with broad

experience in this area of the law" (Dkt. Nos. 14-4, 14-5, 14-6).  *Rosie D.,* 593 F. Supp. 2d at

331.  These affiants attest to Attorney Sankey's experience and reputation and to $275 as being

the community's prevailing hourly rate for similar work (Dkt. Nos. 14-4, 14-5, 14-6).  *See Blum*,

465 U.S. at 896 n.11 ("To inform and assist the court in the exercise of its discretion, the burden

is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own

affidavits -- that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation.  A rate

determined in this way is normally deemed to be reasonable, and is referred to -- for convenience

-- as the prevailing market rate").  Attorney Timothy Sindelar's affidavit buttressed Attorney

Sankey's hourly rate of $275 (Dkt. No. 16-6 ¶6).  Attorney Sindelar's practice in Newton,

Massachusetts focuses on the representation of children and adults with disabilities, including

special education (Dkt. No. 14-6 at ¶¶2, 3).  He was admitted to the Massachusetts bar in 1992,

---

[9] Counsel's hourly rate for special education cases in February 2016 was $300 per hour, and could be $350 per hour in other areas of his practice (Dkt. No. 14-1 ¶5).

spent eight years as a senior staff attorney at the Disability Law Center in Boston, and has represented "hundreds of families in disputes in cases before the [BSEA]" (Dkt. No. 14-6 ¶3). He is familiar with the rates charged by many attorneys in Massachusetts who represent parents and children before the BSEA (Dkt. No. 14-6 at ¶5).  Attorney Sindelar represented four children in the Springfield area during the past year, and charged his "typical" hourly rate of $275, which is Attorney Sankey's billed rate (Dkt. No. 14-1 ¶5; Dkt. No. 14-6 ¶6).  *See Hensley*, 461 U.S. at 430-31 & n.3 (holding that "awards in similar cases" is one factor to be considered in the determination of the amount of the fee) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974)).  Plaintiff also submitted the affidavit of Attorney Joseph Seckler, a partner in the Worcester, Massachusetts law firm of Morrison Mahoney, L.L.P., who has experience representing parties in IDEA cases (Dkt. No. 14-5 ¶¶2, 3).  Attorney Seckler's familiarity with the prevailing hourly rates customarily charged by attorneys with Attorney Sankey's experience in central and western Massachusetts supports Attorney Sankey's rate of $275 per hour (Dkt. No. 14-5 ¶¶5, 6).  *See Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 718); *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 19 (1st Cir. 1988) (courts look to the "prevailing rates in the community for comparably qualified attorneys").

Defendant's argument -- that Attorney Sankey's hourly rate should approximate $200 to reflect the rates of comparable attorneys in the Plaintiff's and Defendant's geographic area of western Massachusetts -- urges an unduly restrictive interpretation of the statute's use of the word "community" (Dkt. No. 18; Dkt. No. 19 at 6-9).  *See* 20 U.S.C. § 1415(i)(3)(F)(ii) (stating that the court can reduce the amount of the attorney's fee award "whenever the court finds that . . . the amount of the attorney's fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably

comparable skill, reputation, and experience").  Plaintiff counters that the relevant community is the entire district of Massachusetts (Dkt. No. 25 at 6-8).  Plaintiff's argument has support in the law.  "The Second Circuit has stated that ordinarily, 'the "prevailing community" the district court should consider is 'the district in which the court sits' . . . ." not the "geographical area in which th[e] action arose." *Sabatini v. Corning-Painted Post Area Sch. Dist*, 190 F. Supp. 2d 509, 513 (W.D.N.Y. 2001) (quoting *Cruz v. Local Union No. 3 of Int'l. Bhd. of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir. 1994) (holding that the "community" was the Western District of New York)).  *See also Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) ("Generally, the relevant community is one in which the district court sits"); *Parker v. Swansea*, 310 F. Supp. 2d 376, 390 (D. Mass. 2004) (setting attorney's hourly rate by considering cases in the district of Massachusetts); *Gonzalez v. Puerto Rico Dep't of Educ.*, 1 F. Supp. 2d 111, 115 (D.P.R. 1998) ("Because this action arose in Puerto Rico, the Court shall consider Puerto Rico to be the relevant community for purposes of determining fees").  *But see Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 197 (D. Mass. 1999) ("The relevant community for the purpose of this determination is Boston, '[t]he community in which the court sits'") (quoting *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).[10]

---

[10] Plaintiff's interpretation of "community" is consistent with Congress's intent "to provide incentives to lawyers to take IDEA cases," particularly lawyers with Attorney Sankey's expertise in special education law.  *J.P. ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty., Va.*, 641 F. Supp. 2d 499, 516 (E.D. Va. 2009) (citing 132 Cong. Rec. 16,823 (statement of Sen. Weicker)). The Supreme Court has acknowledged that "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates" because "the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue." *Blum,* 465 U.S. at 898.  *See Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 245 (D.D.C. 2012) (applying this principle to IDEA litigation).

The result is the same if the "community" is restricted to western Massachusetts. 20 U.S.C. § 1415(i)(3)(C). About fifteen years ago, this court awarded attorneys' hourly fees of $150 and $175. *See Pazik v. Gateway Reg'l Sch. Dist.*, 130 F. Supp. 2d 217, 219 (D. Mass. 2001) ($150); *Andrew S. v. Sch. Comm. of Greenfield*, 59 F. Supp. 2d 237, 248 (D. Mass. 1999) ($175). A $100 increase in fifteen years is not excessive, particularly in view of the court's "knowledge of attorney's fees in its surrounding area." *Andrew v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1190 (1st Cir. 1996). [11]

Plaintiff has sustained her burden of demonstrating that Attorney Sankey's hourly rate is in accord with the prevailing rates in the community. Because the rates are reasonable, the court allows the hourly rates requested by Plaintiff for the lodestar calculation.

D.    Plaintiff's Degree of Success[12]

Although Defendant does not contest Plaintiff's status as the prevailing party under the IDEA (Dkt. No. 19 at 7), Defendant labels her as "a partially prevailing party" and seeks a fifty percent downward adjustment of the lodestar based on the contention that Plaintiff succeed on

---

[11] While the court recognizes that Rhode Island and Maine are not the "communit[ies] in which the action or proceeding arose," 20 U.S.C. § 1415(i)(3)(C), attorneys' fees that were awarded in similar cases in these districts within the First Circuit are helpful to determine whether Attorney Sankey's rate is comparable to the rates recently awarded to experienced attorneys or whether it is out of line. *See Zayas*, 451 F. Supp. 2d at 315 (in determining the reasonableness of the requested hourly rate, the court examined fee awards in other First Circuit cases). *Compare S. Kingstown Sch. Comm. v. Joanna S.*, C.A. No. 13-127-ML, 2015 WL 1915771, at *9 (D.R.I. 2015) (deeming attorneys' hourly rates of $300 and $275 reasonable for an IDEA due process hearing); *S.D. v. Portland Pub. Sch.*, Civil No. 2:13-cv-00152-JDL, 2014 WL 7046190, at *2 (D. Me. 2014) (deeming $300 as a "reasonable and appropriate" hourly rate for experienced lead counsel, a partner in a Portland law firm).

[12] Plaintiff's statement of material facts alleges that the hearing officer "granted Plaintiff *all* of the relief that the [p]arents had sought" (Dkt. No. 16 ¶29). Defendant does not specifically deny this assertion, but claims that the hearing officer did not grant what Defendant asserts was Plaintiff's second request for relief:  placement at the CBDS for the 2015-2016 school year (Dkt. No. 6; Dkt. No. 20 ¶4).

only one of the two remedies that she sought from the BSEA and that her two claims were unrelated (Dkt. No. 18; Dkt. No. 19 at 9-12). *See Mass. Dep't of Pub. Health*, 841 F. Supp. at 456 ("A party need not . . . prevail on all significant issues or receive all relief initially sought in order to qualify as a prevailing party under the statute"). Plaintiff refutes this assertion by arguing either that she prevailed on both of her proposed resolutions, or, if she did not, that a reduction in fees is not appropriate because her two requests were related to the same goal: placement in a "substantially separate language-based program" (Dkt. No. 15 at 13-15; Dkt. No. 25 at 1-6). The record supports Plaintiff's contentions.

The initial step in the analysis is a determination of whether Plaintiff prevailed on both of her claims, or whether she prevailed on only one, because "the 'finding that a party is a prevailing party only makes [her] eligible to receive attorneys' fees under the IDEA; it does not automatically entitle [her] to recover the full amount that [s]he spent on legal representation.'" *S. Kingstown Sch. Comm. v. Joanna S.*, C.A. No. 13-127-ML, 2015 WL 1915771, at *7 (D.R.I. Apr. 27, 2015) (quoting *Jason D.W. v. Hous. Indep. Sch. Dist.,* 158 F.3d 205, 209 (5th Cir.1998)). If she partially prevailed, "*Hensley* lays out a two-step inquiry to determine whether attorneys' fees should be awarded to a partially-prevailing plaintiff: first, the reviewing court considers whether the plaintiff did not prevail on claims unrelated to those on which she succeeded; and, second, the court considers the level of success achieved, including whether the success obtained is proportional to the efforts of counsel." *S. Kingstown Sch. Comm.*, 2015 WL 1915771 at *7 (citing *Hensley,* 461 U.S. at 434; *Westenfelder v. Ferguson,* No. CA 97478L, 2000 WL 303301, at *5 (D.R.I. Feb. 17, 2000)). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting *Hensley,* 461 U.S. at 436).

18

While "a reduction for time spent on unsuccessful claims or redundant or excessive hours is appropriate," *Zayas*, 451 F. Supp. 2d at 316 (citing *Williams v. Hanover Hous. Auth.*, 113 F.3d 1294, 1301 (1st Cir. 1997)), "[i]n analyzing whether [Plaintiff's] claims are unrelated, so as to justify separate treatment for attorneys' fees purposes, the court must determine whether the claims arise from a common core of facts or are based upon related legal theories." *Mass. Dep't of Pub. Health*, 841 F. Supp. at 457 (citing *Hensley,* 461 U.S. at 435; *Nydam v. Lennerton,* 948 F.2d 808, 812 (1st Cir. 1991); *Garrity v. Sununu,* 752 F.2d 727, 734 (1st Cir. 1984)). "When the facts give rise to more than one interconnected claim the district court is warranted in its discretion to award fees for time spent on all aspects of the case." *Mass. Dep't of Pub. Health*, 841 F. Supp. at 457 (citing *Wagenmann v. Adams,* 829 F.2d 196, 225 (1st Cir. 1987)); *see also Hensley,* 461 U.S. at 435 (holding that when claims for relief involve a common core of facts or related legal theories, the lawsuit cannot be viewed as a series of discrete claims; "[i]nstead the district court should focus on the significance of the overall relief obtained by the [claimant] in relation to the hours reasonably expended on the litigation").

The inquiry into Plaintiff's degree of success begins with an examination of the relief that Plaintiff sought from the BSEA, and the hearing officer's orders in response to Plaintiff's requests.  Both parties agree that Plaintiff requested:  (1) "an order of placement at [the CBDS] for the 2014-15 school year beginning in January 2015, with reimbursement of tuition and costs paid through the date of the order;" and (2) "an order of placement in [an] appropriate language based program" for the 2015-2016 school year (Dkt. No. 16 ¶20; Dkt. No. 16-5 at 9; Dkt. No. 20 ¶¶1, 2).  There is no dispute that Plaintiff prevailed on her first request (Dkt. No. 16 ¶34; Dkt. No. 16-2 at 32).  The hearing officer directed Defendant to reimburse Plaintiff's parents for tuition and costs associated with her enrollment at the CBDS from January to June 2015 (*id.*).

The point of contention is whether Plaintiff prevailed on her second request for relief. Defendant argues that Plaintiff did not achieve 100% success because she sought prospective placement at the CBDS for the 2015-2016 school year, but the hearing officer did not order that placement (Dkt. No. 19 at 10; Dkt. No. 20 ¶¶4, 5).   Plaintiff disputes Defendant's assertion that she requested prospective placement at the CBDS, and cites the hearing officer's statement that "prospective placement for next year at [CBDS] is not currently on the table" (Dkt. No. 26 ¶4).

Both parties agree, however, that, in response to Plaintiff's second request, the hearing officer ordered Defendant to "locate or create a substantially separate language-based program" for 2015-2016 (Dkt. No. 16 ¶35; Dkt. No. 20 ¶16).   Under these undisputed facts, Plaintiff prevailed on her second request.

Even if, as Defendant contends, Plaintiff had requested and did receive a placement at the CBDS for 2015-2016, this disputed fact is not material to the court's decision since the undisputed facts demonstrate that both of Plaintiff's requests were grounded in a "common core of facts."[13]   *Mass. Dep't of Pub. Health*, 841 F. Supp. at 457.   "A fact is material if it has the potential of determining the outcome of the litigation."   *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).   Accordingly, Plaintiff is entitled to an award for all of the time spent by counsel in proving the common core of facts.   *See Mass. Dep't of Pub. Health*, 841 F. Supp. at 457; *L.P.,* 2012 WL 5200078, at *4 ("Where failed and successful claims are related, this [c]ourt has discretion to award compensation for work that relates to both").

Dr. Miles's and Ms. Ziegler's recommendations -- that Plaintiff needed a "substantially separate language-based program" in order to receive a FAPE -- formed the "common core of

---

[13] Indeed, Defendant concedes that "Plaintiff's claims were, in part, interrelated . . . ." (Dkt. No. 19 at 10).

facts" that undergirded both of the hearing officer's orders (Dkt. No. 16 ¶¶6, 11, 12, 30; Dkt. No. 16-2 at 8-9, 12-16, 29-30). *Mass. Dep't of Pub. Health,* 841 F. Supp. at 457. *See Hensley*, 461 U.S. at 434-35 (explaining that, the more closely related the claims, the more difficult it is to segregate the hours on a claim-by-claim basis). Dr. Miles evaluated Plaintiff in April 2014 and Ms. Ziegler assessed her in September 2014 (Dkt. No. 16 ¶¶6, 11). These evaluators indicated, and the hearing officer found, that the December 2014 IEP, which was crafted after Plaintiff's parents notified Defendant that Plaintiff would attend the CBDS in January 2015, did not provide a substantially separate language-based program (Dkt. No. 16 ¶¶14-17, 30, 31; Dkt. No. 16-2 at 20-21, 30-31). Instead, it was an inclusion program with sixteen pull-out sessions per week, which did not provide a FAPE to Plaintiff (Dkt. No. 16 ¶¶ 15, 32, 33; Dkt. No. 16-2 at 19-21, 30-31). Defendant did not offer Plaintiff a substantially separate language-based program at any time up to the first day of the BSEA hearing in June 2015 (Dkt. No. 16 ¶¶17, 31; Dkt. No. 16-2 at 30-31). Because Plaintiff's placement in the CBDS's substantially separate language-based program was appropriate, Defendant was ordered to reimburse Plaintiff's parents for the tuition and costs for Plaintiff's second grade enrollment from January to June 2015 (Dkt. No. 16 ¶¶21, 34; Dkt. No. 16-2 at 21, 31-32). The same evidence that supported Plaintiff's placement at the CBDS for the second grade also supported the hearing officer's order that Defendant "locate or create" a "substantially separate language-based program" for her third grade placement in 2015-2016 (Dkt. No. 16 ¶30; Dkt. No. 16-2 at 30-31).[14] The claims are factually interconnected: the attorney's work on the first claim for reimbursement for 2014-2015 cannot be severed from his

---

[14] The hearing officer found that Defendant's Focus Program "may well be appropriate" for Plaintiff in 2015-2016 (Dkt. No. 16-2 at 32). The hearing officer, however, was not able to conclude that Defendant had created a substantially separate language-based program for Plaintiff because, at the time of the due process hearing, the Focus Program's components were not definite and it was not a recommended placement in Plaintiff's IEP (Dkt. No. 16-2 at 32).

efforts to obtain Plaintiff's prospective placement in a similar program for 2015-2016.  As a result, a reduction of attorney's fees based on partial success is not warranted.  *See Mass. Dep't of Pub. Health*, 841 F. Supp. at 457 ("When the facts give rise to more than one interconnected claim, the district court is warranted in its discretion to award fees for time spent on all aspects of the case").  *Contrast L.P.*, 2012 WL 5200078, at *5 (denying fees associated with an unsuccessful issue that was "clearly separable" from others).

IV.    <u>Conclusion</u>

For the reasons stated, Plaintiff's motion for summary judgment (Dkt. No. 14) is ALLOWED, and Defendant's cross motion (Dkt. No. 18) is DENIED.  Accordingly, Defendant is ordered to pay Plaintiff $38,887.50 in attorney's fees and $916.48 in costs.  This case may now be closed.

It is So Ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

June 29, 2016